UNITED STATES *v.* D. H. ARMAGHANIAN, COLONIAL PROCESS & SUPPLY CORP., N. Y. BOLTING CLOTH CO., SILK SCREEN SUPPLIES (No. 4435) [1]

[1] C. A. D. 263.

United States Court of Customs and Patent Appeals, November 1, 1943

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon* and *Joseph F. Donohue*, special attorneys, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Eugene F. Blauvell* of counsel) for appellee.

[Oral argument October 7, 1943, by Mr. Donohue and Mr. Blauvelt]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, sustaining four protests of importers which had been consolidated by stipulation for trial. The protests are numbers 70584–K/16435, 70585–K/18887, 70586–K/19034, and 70598–K/24011, and were made by the following importers respectively: D. H. Armaghanian, Colonial Process & Supply Corp., N. Y. Bolting Cloth Co., and Silk Screen Supplies. The involved merchandise was classified for duty by the Collector of Customs at the port of New York under paragraph 1205 of the Tariff Act of 1930 as woven fabrics in the piece, wholly or in chief value of silk, not specially provided for, at 55 per centum ad valorem. It was claimed by the importers and held by the trial court to be properly dutiable under that paragraph as modified by the trade agreement with Switzerland, January 9, 1936, T. D. 48093, 69 Treas. Dec. 74, as silk bolting cloth not specially provided for at 30 per centum ad valorem. The only silk bolting cloth specially provided for in said act is set out in paragraph 1626, wherein such cloth imported expressly for milling purposes and so permanently marked as not to be available for any other use is free of duty.

By stipulation approved by the trial court it was agreed that the merchandise involved in the case of *D. H. Armaghanian et al.* v. *United States*, protest 6467–K etc., C. D. 451, was similar in all material respects to the merchandise here involved, and it was further stipulated that the record with all the exhibits in that case, and the record in the case of *United States* v. *D. H. Armaghanian*, 27 C. C. P. A. (Customs) 170, C. A. D. 81, should be incorporated in the instant case.

At the trial, which was held in the city of New York, the Government contended that the provision for "silk bolting cloth" in paragraph 1205 as amended is not a use provision and the manner in which the involved merchandise is employed is not a bolting use.

The trial court held that the additional evidence in the instant case did not change the factual situation from that of the two incorporated cases, and on the authority of the decisions in the incorporated cases sustained the involved protests.

The issues here are the same as those presented to the lower court, and if either should be decided in favor of appellant the judgment appealed from must be reversed.

In the *Armaghanian* case, 27 C. C. P. A. *supra*, the record consisted solely of the testimony of the importer. Neither a sample of the importation nor any illustrative exhibit was before the court. The record in that case disclosed that the importer had been for a long time in the silk business and that his main business, at the time of taking testimony, was the importation of bolting cloth. He stated that the cloth covered by the invoice was bolting cloth and that it might be used for bolting, sifting, or passing through liquids or paints or dyes in liquid, near liquid, or in powdered form. He further testified that the merchandise in suit was natural, pure silk. He admitted he did not understand the meaning of the terms "gauze woven" or "leno woven" silk. He stated that the merchandise in suit was leno woven, synonymous in his opinion with line woven, and that the merchandise was not bleached. The witness stated that the goods were always used on screens put in a frame, that they could not otherwise be used, and that they were not good for anything else. He testified that he had seen the imported cloth used for passing through pigments in the form of paint, straining syrup, straining paint "and other things in order to get it fine, even getting the liquid out of it," and that he had seen it used in screen printing. The witness stated that he ordered the merchandise as bolting cloth and sold it as bolting cloth "or sometimes we call it stencil cloth. It is bolting cloth for stencil. They are the only two forms and two names we use in the trade." The witness described bolting cloth as being made of pure silk with a certain degree of strength and non-sagging whether wet or dry. The cross-examination of the witness was directed entirely to his knowledge of weaves, concerning which he knew practically nothing.

The Government in that case contended before the trial court that the plaintiff had not established a *prima facie* case, and in its brief here on appeal it set out the definition appearing on page 257 of a publication by the United States Tariff Commission entitled "Concessions Granted by the United States in the Trade Agreement with Switzerland," 1936, reading as follows: "Silk bolting cloth is a strong,

fine, leno (gauze) fabric, not weighted or bleached, and having a light gum finish." In support of its contention the Government also quoted from Cyclopaedia of Textile Work, published by the American Technical Society, volume III, pages 6 and 237; and from a work "The Textile Industries" by William S. Murphy assisted by experts in textile technology, published by Gresham Publishing Co., London, England, volume VI, at pages 104 and 106.

We affirmed the judgment of the lower court sustaining the protest, and held that even though the testimony of the witness was not as clear and definite in some of its phases as it might be there was no conflict between any of his statements, and that he had established a *prima facie* case that the imported merchandise was chiefly used for bolting purposes and was therefore the kind of bolting cloth provided for in paragraph 1205 as amended.

In the case of *D. H. Armaghanian et al.* v. *United States*, C. D. 451, witnesses appeared for both parties and several exhibits were received in evidence. In that case a witness for plaintiffs, who was one of the importers, testified that as far as he knew the chief use of the involved merchandise there (which was testified to be the same as the goods imported in the prior *Armaghanian* case, *supra*) was in screen process printing. He also testified that all of his merchandise was sold to the screen printing trade. A witness for the Government in that case, vice president of a company said to be the largest importer of bolting cloth in the United States, testified that the imported merchandise was never known as bolting cloth but was just a plain weave with the threads simply going under and over each other and was known as silk taffeta and was exclusively sold to the screen process printing trade. The witness identified what was conceded to be silk bolting cloth and said that it had to be made with a leno weave. He described that weave as follows: "The warp threads are twisted around each other between two weft threads, and afterwards the next weft threads which are again crossed come to their first position. That is repeated indefinitely." The witness defined a plain weave as "a weave in which one pick is raised over all the odd ends of the warp and passes under all the even ends of the warp; and the next pick is raised over all the even ends and passes under all the odd ends of the warp. But all the warp ends run parallel; they do not cross each other." He stated that cloth such as the imported merchandise is designated as "taffeta weave" to distinguish it from bolting cloth which is more expensive and made with "leno weave." The witness further testified that the primary reason why bolting cloth and taffeta weave cloth were not interchangeable was that the bolting trade would never accept the taffeta weave for bolting purposes.

The record in the case of *United States* v. *D. H. Armaghanian*, 27 C. C. P. A. *supra*, was received in evidence in the later case.

The trial court in its decision, C. D. 451, under the authority of the *Armaghanian* case, 27 C. C. P. A. *supra*, held that the classification of the merchandise depended upon the chief use of the class of cloth to which the importation belonged on or prior to the effective date of the Swiss Trade Agreement and that the merchandise was chiefly used for bolting purposes. Judgment was rendered for the importers accordingly. From that judgment no appeal was taken.

In neither of the prior cases was there any evidence showing the process of screen printing, but the record before us now discloses in detail that process. The art of screen printing is clearly an advance or development of the stencil art, wherein any kind of figure may be laid in color through open spaces of a sheet in which the pattern of the figure is cut. In screen printing designs may be laid upon almost any kind of flat surface, such as glass, metal, paper, or cloth, by means of keeping the interstices of the pattern of the design open and blocking all other interstices. According to the record here, the imported merchandise is used almost entirely for screen printing. The cloth used as a screen is fixed tightly to a frame with elevated sides. The screen made as aforesaid is placed directly on the article to be printed and the coloring material in liquid form is poured on to an impervious portion of the cloth and a quantity of it brought on and over the open-work design by means of a squeegee. This process is contended by appellees to be a screening process. It appears in the record that infrequently and accidentally some scum or particles too large to go through the interstices of the cloth are in the paint and appellees contend that because these foreign materials do not go through the openwork design the process is that of bolting.

It is clear from the entire record in this case that the involved merchandise is not silk bolting cloth, nor is it chiefly used for bolting.

An examination of the exhibit which is a sample of goods similar in all respects to that imported here, shows a plainly woven open-weave cloth such as hereinbefore described. Other exhibits which are concededly silk bolting cloth are not plainly woven but answer to the leno or gauze weaving also hereinbefore described. The difference in the construction of the two kinds of weaving is that in the case of leno woven fabrics the threads are locked at the points of crossing, whereas in the plain woven cloth no such condition obtains. There can be no doubt but that bolting cloth is not the only cloth used in screen printing, but we are of opinion that any other silk cloth similarly used is not necessarily bolting cloth.

It is clear that all leno woven silk fabric is not bolting cloth, but it is equally clear that all silk bolting cloth is so woven. If the leno woven silk fabric is not suitable for bolting use by reason of its frailty, as is shown by one of the exhibits, or any other reason, it cannot be termed silk bolting cloth.

The lexicographers are quite uniform in defining bolting cloth as being composed of fabrics of different degrees of fineness used by millers for sifting flour, and as a kind of fine fabric for fancy work. The Dictionary of Tariff Information, 1924, defines silk bolting cloth as follows: "Silk bolting cloth is a strong, fine gauze-woven silk fabric used for sifting flour or other finely pulverized materials." An "Analysis of the General Provisions and Reciprocal Concessions" was published by the Department of State on January 9, 1936, the date on which the Swiss Trade Agreement was signed, stating among other things as follows:

*Silk specialties.*—Under paragraph 1205 there are dutiable three types of silk specialties of which Switzerland is the principal supplier and on which reductions of duty have been made. *The most important of these is leno-woven silk cloth, commonly called bolting cloth.*

Silk bolting cloth imported expressly for milling purposes and so marked is free of duty. Such cloth has, however, recently acquired important uses in textile printing and in the sign painter's art. For these purposes it is subject to duties of 55 or 60 percent, depending on width. Over 40 requests were received by the Committee for Reciprocity Information urging a reduction in these duties, and the agreement effects a reduction to 30 percent irrespective of width. Switzerland supplies the bulk of the world demand for this specialty which is a fine silk fabric woven with almost microscopic precision of hard-twist organzine. None is produced in the United States. Imports from Switzerland of silk bolting cloth for milling purposes—bound on the free list—amount to upwards of $300,000 annual. Imports of the same cloth for the textile and sign painters' industries are not separately recorded, but are known to amount to only about 5 percent of that for milling purposes. [Italics supplied.]

We have no doubt that the Congress knew that silk bolting cloths might be used otherwise than for milling purposes for the reason that in paragraph 1626 it required such cloth when imported for milling purposes to be so permanently marked as not to be available for any other use. The parties to the Swiss Trade Agreement quite clearly understood that silk bolting cloths might be used for purposes other than milling.

In our opinion in view of the record, the common meaning, and the official pronouncements of the Government quoted, the silk bolting cloth which the two Governments had in mind by the said trade agreement was of leno gauze weave, and other silk fabrics which were not so woven were not within the agreement. Therefore, in order to come within the trade-agreement provision for bolting cloth, the fabric must be leno woven and it is also clear that to come within the said provision it must be chiefly used for bolting purposes.

Clearly the involved merchandise is neither leno woven nor chiefly used for bolting purposes. It is used as means by which designs may be printed, and not for the purpose of sifting different sizes of material from an aggregate. Therefore, since in our opinion the involved merchandise does not conform to the silk bolting cloth covered by the Swiss Trade Agreement, the judgment appealed from must be reversed.

Appellees contend that our decision in the *Armaghanian* case, 27 C. C. P. A. *supra*, is *stare decisis* of the issue here. With that contention we cannot agree. It will be noted that that case came before us with the testimony of the importer alone and no exhibits. It will be further noted that there was nothing in the record which would contradict the testimony of the witness that the merchandise involved answered to the description of the leno weaving of silk bolting cloth. Therefore we held that the appellant had established a *prima facie* case and in the light of his uncontradicted testimony we further held that the imported merchandise was used for the purpose of bolting. Clearly had the record in that case contained all of the facts that are now before us, the judgment of the trial court would have been reversed.

For the reasons herein stated, the judgment appealed from is *reversed*.